## FERNANDEZ v. BEIN.

Where the highest and last bid, made at a judicial sale, is insufficient to discharge a mortgage existing on the property entitled to a preference over the claim of the judgment creditor, there can be no adjudication. C. P. 684.

One to whom a slave, advertised for sale as in a state of unconditional slavery, is adjudicated at a judicial sale, cannot be compelled to comply with his bid, if it turn out that the slave is a *statu-liber*.

APPEAL from the Parish Court of New Orleans, *Maurian*, J. *Deslix* for the appellant. *Denis* and *Pilot*, contrâ.

The judgment of the court was pronounced by

EUSTIS, C. J.   On the 18th of October, 1842, *Eulalie Cheval*, a free person of color, sold to the defendant a certain negro slave, named *Sarah*, then about nineteen years of age, for the sum of $420, on a credit of six months.

For this sum she gave a note, endorsed by her husband, bearing interest, of which the plaintiff is the holder.   To secure the payment of this note and interest, the defendant executed a mortgage on the slave *Sarah*, which mortgage was duly assigned to the plaintiff.

The plaintiff prayed for an order of seizure and sale of the slave, to satisfy the debt, interest and costs.

The note was identified by the notary with the mortgage; and the remedy which the plaintiff seeks is dependent on the act of sale and mortgage before recited.

The sheriff's return states that the slave was adjudicated to *J. J. Jandot*, for $600; but that nothing came to his hands from the sale, by reason of *Jandot's* not complying with the conditions of it.

A rule was taken on the sheriff, at the instance of the plaintiff, to show cause why he should not pay the plaintiff the amount due on his note.   The answer of the sheriff charges that *Jandot* has refused to pay the price, on account of certain mortgages recited in the recorder's certificate; and because the slave *Sarah* is only a slave for a *term of years*, or a *statu-liber*, and not a slave for life; and that she was advertised, unconditionally as a slave.

*Jandot*, being called in as a party by the sheriff, makes substantially the same pleas for the non-payment of the price of the slave.

I.   As to the mortgage.   The recorder certifies that the slave is subject to a mortgage of $1000, by act passed before *Ducatel*, notary, dated 6th December, 1841, and recorded on the 1st of February, 1842, granted by *Eulalie Cheval* to *Edward Jones*.   This mortgage is recited in the act before mentioned by

which the slave *Sarah* was sold to the defendant. In this act, *Theodule Drou- et*, of this city, intervenes and declares that, "being the last bearer of the above two mentioned notes of $500 each, forming the amount of $1000, mortgaged in favor of said *Edward Jones*, he doth by these presents, give a full discharge and entire release of the mortgage mentioned in the certificate hereto an- nexed."

We have not before us the act of Dec. 6th, 1841, in which the mortgage is stipulated, and we do not see any sufficient connection between this mortgage of $1000 and the declaration of *Drouet*, to authorise us to determine that it is a lawful release of the mortgage; and we presume the recorder of mortgages came to the same conclusion. At all events, the mortgage is not proved to have been released, and we must consider it as still existing.

The bid of *Jandot* was for $600. If the mortgage for $1000 existed, it is obvious that, under the 684th article of the Code of Practice, there was no sale.

II. But if the mortgage did not exist, the plaintiff's situation is not benefitted by it. He can have no rights over the slave mortgaged, other than his assignor, the vender, had. In the sale for the price of which this note is given, there is this condition:

" The present sale is further made under the express condition, without which it should not take place, that, in case during the space of ten years from this day, the father of said slave *Sarah*, *Francis Lockwood*, should be willing to purchase his said child, *Sarah*, or, in case of her father's death, said *Sarah* should be will- ing to use the same privilege of purchasing herself, said *Mrs. J. D. Bein*, duly authorized by her husband, promises and obligates herself, her heirs and assigns, or any other possessors after her, of said slave, to desist of the possession of said *Sarah*, in favor of her father, said *Francis Lockwood*, or of herself, his said daughter *Sarah*, provided he or her should reimburse to said *Mrs. Bein*, her heirs or assigns, or any lawful possessors of said slave, the above specified sum of $420, the amount of the present sale."

By this clause, so far as relates to the vendor and vendee, this slave obtained the privilege of becoming free by purchasing herself in a certain event. If, during the ten years subsequent to the sale, her father should die, and she pay the sum of $420 to the purchaser, or her assigns, so far as these parties were concerned, the slave, *Sarah*, would be entitled to her freedom. Civil Code, arts. 37, 193, 194, 195, 196.

She became a *statu-liber*—her condition was thereby changed, and the plain- tiff is estopped by his own act from treating her *as a slave for life*. She was advertised for sale as a *slave* unconditionally, and she was, by the plaintiff's own contract, that is by the contract of which he claims the benefit by assignment, in enforcing the payment of the price by a judicial sale, created a slave for years, and, as such, she ought to have been advertised.

It must be understood, that our opinion of the change of condition of this slave, is confined exclusively to the party before us as plaintiff, and the obligations of the purchaser at the sheriff's sale.

III. If the mortgage existed there was no sale; and, if it did not exist, there was no legal advertisement. Either hypothesis is fatal to the plaintiff's preten- sions. *Judgment affirmed.*